IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

LAWRENCE R. RHODES,

              Petitioner,

    vs.

WILLIAM LEE, Superintendent, Green
Haven Correctional Facility,

              Respondent.

No. 9:12-cv-01747-JKS

MEMORANDUM DECISION

Lawrence R. Rhodes, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Rhodes is currently in the custody of the New York State Department of Corrections and Community Supervision and is incarcerated at Green Haven Correctional Facility. Respondent has answered, and Rhodes has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On February 6, 2008, a grand jury charged Rhodes with 13 counts of Criminal Sexual Act in the Second Degree, 12 counts of Criminal Sale of Marijuana in the Second Degree, 1 count of Attempted Criminal Sexual Act in the Third Degree, 2 counts of Sexual Abuse in the Third Degree, and 6 counts of Endangering the Welfare of a Child in connection with the alleged sexual abuse of his adopted daughter between September 2006 and December 2007 when she was 15 years old. Six months later, Rhodes was charged by separate indictment with 7 counts of Criminal Sexual Act in the First Degree and 1 count of Attempted Rape in the First Degree stemming from criminal conduct against his other adopted daughter alleged to have occurred between August 2007 and November 2007 when she was 17 years old.

In a pre-trial proceeding, the prosecution provided Rhodes with a copy of an indictment against Desmond DeFreitas, a neighbor who had become friends with the Rhodes children. The indictment accused DeFreitas of committing burglaries in the presence of at least one unnamed minor and committing sexual offenses against an unnamed minor. Defense counsel stated that he understood that "the gist of the conduct that's alleged in that indictment was that Desmond DeFreitas was accompanied by one or both of these girls, was breaking into buildings with the intent to commit a crime. And also, I believe engaging in sexual intercourse with one of these girls . . . ." Defense counsel asked the prosecution to identify the victims of DeFreitas' sexual crime and for a copy of the bill of particulars in the DeFreitas case. Defense counsel stated that he had placed DeFreitas on his witness list but did not wish to call him and would rather have the court take judicial notice of the DeFreitas indictment and allow it to be entered into evidence instead. The prosecutor asked for an offer of proof as to the purpose of the proposed admission of the DeFreitas indictment.

Defense counsel argued that he believed that DeFreitas had framed Rhodes to detract attention from his own crimes and to continue to sexually abuse the girls. He likewise argued that the girls should be impeached with the fact that one of the daughters did not tell the police in December 2007 about the crimes that DeFreitas was alleged to have committed against her in the fall of 2007. He additionally claimed that the girls were "trying to protect Desmond" by not offering details of his abuse and therefore were motivated to lie about what Rhodes had done to them. He further argued that because Rhodes had sought custody of the girls, DeFreitas and the girls' mother had concocted the charges.

The court stated that "[t]here is nothing other than pure speculation that there was a motive to lie" and that New York's Rape Shield Law barred many of the inquiries into the girls' relationship with DeFreitas that were sought by the defense. The judge additionally stated that she had reviewed the grand jury transcript in the DeFreitas case and "didn't see anything that [she] would characterize as *Brady*[1] material." The court also referred the defense to *People v. Mandel*, 401 N.E.2d 185 (N.Y. 1979), for the proposition that New York's Rape Shield Law precluded the defense from impeaching a complainant with the fact that she had made complaints against other people "[i]n a case such as this where certainly there has been no showing that the accusation is false and/or similar enough to the complainant's accusation of a defendant to suggest a pattern of false complaints." The court therefore ruled that the accusations against DeFreitas were not relevant to the case against Rhodes.

At the conclusion of trial, the jury found Rhodes guilty on all counts except one count of attempted first-degree rape, one count of first-degree criminal sexual act, and one count of attempted third-degree criminal sexual act. The court sentenced Rhodes to an aggregate 25-year prison term plus 20 years of post-release supervision.

Through counsel, Rhodes appealed his conviction to the Appellate Division, arguing: 1) the court improperly admitted evidence of his bad acts; 2) exculpatory evidence from the Schoharie County Department of Social Services was unlawfully withheld from him; 3) the court erred in excluding the DeFreitas indictment; 4) the evidence was insufficient to support the marijuana sale convictions; 5) the loss of a trial exhibit during deliberations deprived him of due

---

[1]      *Brady v. Maryland*, 373 U.S. 83 (1962). The term "*Brady*" is a shorthand reference to the rules of mandatory discovery in criminal cases under federal law.

process; and 6) his sentences were excessive. On January 26, 2012, the Appellate Division affirmed his conviction in its entirety in a reasoned opinion. Rhodes sought leave to appeal to the New York Court of Appeals, asking the court to consider his claims that he should have been able to cross-examine his daughters about their relationship with DeFreitas and introduce the DeFreitas indictment. The Court of Appeals summarily denied the application on June 29, 2012.

Rhodes timely filed a Petition for a Writ of Habeas Corpus to this Court on November 21, 2012.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Rhodes asserts two grounds for relief. He first argues that the prosecutor suppressed and the court excluded evidence that his daughters engaged in criminal and sexual activity with Desmond DeFreitas and that one of the prosecution witnesses testified falsely about whether a DNA sample was collected from the girls' mother. He additionally contends that he was deprived of his right to appeal. In his Traverse, Rhodes states that he "respectively withdraws all grounds except Ground I." In support of Ground I, Rhodes states that "[t]he limiting of cross examination of [his] accussers [sic], thereby annulling defense strategy, was a violation" of his constitutional rights and that "the court[']s ruling that the accusations against DeFreitas [were] irrelevant denied him any possible defense." This Court will therefore only address his claim that the exclusion of the DeFreitas evidence violated his rights to confrontation and to present a defense.

III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding,"

§ 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that

contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that

are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives

at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the petition raises issues of the proper application of state law, they are

beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S.

Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was

correctly applied). It is a fundamental precept of dual federalism that the states possess primary

authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62,

67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and

application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state

court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536

U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned

decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*,

229 F.3d 112, 118 (2d Cir. 2000). Under the AEDPA, the state court's findings of fact are

presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Rhodes contends that he was denied his constitutional rights to confront his accusers and to present a defense when the trial court prohibited him, pursuant to New York's Rape Shield Law, from cross-examining the victims or otherwise offering evidence about their prior criminal and sexual relationship with DeFreitas. Rhodes raised this claim on direct appeal, and it was summarily rejected on the merits.

It is well settled that, under the Sixth Amendment, an accused has the right to present witnesses, testimony and other evidence in his defense. *See Washington v. Texas*, 388 U.S. 14, 19 (1967). However, "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 409-10 (1988). States have considerable latitude under the Constitution to establish rules excluding evidence from criminal trials. *Holmes v. S. Carolina*, 547 U.S. 319, 324 (2006). The Second Circuit has further mandated:

> "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 88 L. Ed. 2d 15 (1985) (per curiam) (emphasis omitted). A trial judge retains "wide latitude" to restrict cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." [*Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)]; *see also Watson v. Greene*, 640 F.3d 501, 510 (2d Cir. 2011) (the "decision to restrict cross-examination will be reversed only when the court has abused its broad discretion" (internal quotation marks omitted)). "To determine the propriety of cross-examination, as with other determinations of admissibility of evidence, courts balance prejudice versus probative value." *Watson*, 640 F.3d at 510.

*Corby v. Artus*, 699 F.3d 159, 166 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1287 (2013); *see also*

*Grant v. Demskie*, No. 99-2744, 2000 WL 1715224, at *4 (2d Cir. Nov. 13, 2000) (holding on

habeas review that state trial court did not abuse its discretion in precluding admission of

allegedly false allegations regarding prior sexual incidents where defense presented "little

evidence" that the allegations were indeed false).

In his Petition and Traverse, Rhodes characterizes this claim as a constitutional

deprivation of his rights to confrontation and to present a defense. However, the substance of the

claim is that the trial court made an erroneous ruling under New York Criminal Procedure Law

("CPL") § 60.42, New York's Rape Shield Law. That law provides that evidence of a victim's

past sexual encounters is generally inadmissible at a sexual abuse trial, unless certain exceptions

are met.[2]  Such a claim—which is a matter of state evidentiary law—is insulated from review by this Court.  *See Estelle*, 502 U.S. at 67-68.

Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 67-68.  Thus, it is outside the purview of this Court to determine whether the trial court misinterpreted or misapplied New York's Rape Shield Law when it precluded Rhodes

---

[2]      That section provides:

Evidence of a victim's sexual conduct shall not be admissible in a prosecution for an offense or an attempt to commit an offense defined in article one hundred thirty of the penal law unless such evidence:
1. proves or tends to prove specific instances of the victim's prior sexual conduct with the accused; or
2. proves or tends to prove that the victim has been convicted of an offense under section 230.00 of the penal law within three years prior to the sex offense which is the subject of the prosecution; or
3. rebuts evidence introduced by the people of the victim's failure to engage in sexual intercourse, oral sexual conduct, anal sexual conduct or sexual contact during a given period of time; or
4. rebuts evidence introduced by the people which proves or tends to prove that the accused is the cause of pregnancy or disease of the victim, or the source of semen found in the victim; or
5. is determined by the court after an offer of proof by the accused outside the hearing of the jury, or such hearing as the court may require, and a statement by the court of its findings of fact essential to its determination, to be relevant and admissible in the interests of justice.

N.Y. CRIM. PROC. LAW § 60.42.

from cross-examining the victims or entering evidence about their prior criminal and sexual history with DeFreitas, and such a claim does not present a federal question for which habeas relief is available. *See id.*; *Rasmussen v. Filion*, No. 01-CV-6215P, 2005 WL 318816, at *10 (W.D.N.Y. Feb. 9, 2005) (recognizing that the state court's interpretation of New York's Rape Shield Law is beyond the purview of federal district court's habeas review).

Moreover, the Second Circuit has held that the restrictions imposed by New York's Rape Shield Law are not *per se* unconstitutional nor unconstitutional as applied to a defendant who was precluded from cross-examining a victim about her prior sexual history. *See Agard v. Portuondo*, 117 F.3d 696, 705 (2d Cir. 1997), *rev'd on other grounds*, 529 U.S. 61 (2000). Indeed, Federal Rule of Evidence 412 significantly proscribes in federal court evidence of the victim's sexual conduct where the defendant is accused of a sexual offense. *See* FED. R. EVID. 412(a),(b). This Court therefore is limited to the question of whether the trial court's ruling deprived Rhodes of a fundamentally fair trial. *See Washington v. Scriver*, 255 F.3d 45, 56 (2d Cir. 2001) ("state evidentiary rules cannot be inflexibly applied in such a way as to violate fundamental fairness").

Rhodes contends that he should have been permitted to cross-examine the victims about their past sexual and criminal history[3] with DeFreitas because such testimony would have been

_____

[3]     Rhodes also complains that the court excluded evidence that the girls engaged in criminal activity with DeFreitas. It does not appear from the record that the court or the parties addressed whether evidence relating to the victims' alleged criminal activity, as opposed to their sexual activity, should be admitted. "[T]he extent to which a party should be allowed to use prior convictions and bad acts to impeach the credibility of a witness is a matter that is generally left to the discretion of the trial court." *People v. Little*, 807 N.Y.S.2d 756, 758 (N.Y. App. Div. 2005) (citation omitted). To the extent that Rhodes argues in his Petition that the criminal activity should have been admitted, this Court cannot say that the trial court abused its discretion by excluding such evidence. Rhodes does not allege that the victims were charged or even

probative of the victims' motive to fabricate the charges against him. The trial court's decision preventing him from doing so, he argues, abridged his right to present a complete defense. The Court rejects this contention.

The record reflects that, although Rhodes was precluded from cross-examining the victims about any alleged sexual relationship with DeFreitas, he was still able to cross-examine the victims on other aspects of their testimony that weighed in on their credibility. Rhodes was not prohibited from asking the victims whether DeFreitas convinced them to fabricate the allegations against Rhodes, and the record shows that Rhodes was able to question one of the victims as to how DeFreitas would manipulate the other. Federal courts in this Circuit have held that rape shield statutes represent an appropriate limit on the Sixth Amendment's right of an accused to confront his accusers where the defendant has been otherwise able to impeach the victim's credibility through effective cross-examination. *See, e.g., Carroll v. Hoke*, 695 F.Supp. 1435, 1439 (E.D.N.Y. 1988) (exclusion of testimony pursuant to Rape Shield Law did not violate defendant's constitutional right of confrontation where ample evidence impeaching victim's testimony was elicited, *aff'd*, 880 F.2d 1318 (2d Cir. 1989)).

The Second Circuit has cautioned that "the preclusion of motive evidence may present a strong argument that a constitutional violation has occurred." *Grant*, 2000 WL 1715224 at *4

---

alleged by authorities to have assisted DeFreitas in the robbery for which DeFreitas was convicted. The trial court acted well within its discretion and within the bounds of the Confrontation Clause because the limited probative value of the evidence was outweighed by the undue consumption of time that the presentation of such evidence would require as well as the danger of confusion to the jury. *See United States v. Scheffer*, 523 U.S. 303, 314 (1998) (noting that "collateral litigation prolongs criminal trials and threatens to distract the jury from its central function of determining guilt or innocence"). The admission of such evidence would have raised legitimate concerns that proving up the uncharged offense would have resulted in a "minitrial" that would have unduly complicated the matter.

(citing *Olden v. Kentucky*, 488 U.S. 227, 231 (1988) ("[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination."); *Justice v. Hoke*, 90 F.3d 43, 50 (2d Cir. 1996) (granting writ of habeas corpus where "the testimony regarding Locke's motivation to fabricate the allegations against Justice could have raised a reasonable doubt regarding the truthfulness of Locke's allegations")). Here, however, the proffered motive was, as the trial court found, "pure speculation." *See Grant*, 2000 WL 1715224 at *4 (no constitutional violation where "there is little evidence in the record indicating that significant motive evidence was in fact precluded by [Rape Shield] restrictions"). Rhodes therefore cannot demonstrate that the evidence excluded was particularly relevant to his case. *See Carroll*, 695 F. Supp. at 1439 (evidence barred by Rape Shield was not particularly relevant to defendant's alibi defense and thus exclusion did not violate the defendant's confrontation right). Indeed, it predominately showed only that another person was also guilty of a similar offense against one of the victims. *Cf. United States v. Elbert*, 561 F.3d 771, 777 (8th Cir. 2009) ("Whether the children engaged in acts of prostitution before or after their encounters with [defendant] is irrelevant, and would only prove other people may be guilty of similar offenses of recruiting, enticing, or causing these victims to engage in a commercial sex act.").

Moreover, in light of the weak probative value of the DeFreitas evidence and the significant evidence against Rhodes, this Court concludes that any error in excluding the DeFreitas evidence was harmless. The victims offered extensive testimony detailing the abuse, which the jury apparently found credible. DNA evidence supported the testimony of one daughter that Rhodes repeatedly ejaculated onto her bedroom heating vent. Multiple neighbors

additionally testified that they saw Rhodes place his hand on the other daughter's inner thigh and between her legs, thus corroborating that daughter's testimony. One of those neighbors daily witnessed Rhodes kiss his daughters in a way that made the neighbor feel "uneasy." As other circuit courts have recognized, any error in the exclusion of proffered evidence under a state's Rape Shield is rendered harmless where, as here, the petitioner's guilt is overwhelming. *Dittrich v. Woods*, 419 F. App'x 573, 578 (6th Cir. 2011) (holding that exclusion of evidence under state's rape shield law was at most harmless error where evidence of the petitioner's guilt was overwhelming); *United States v. Valenzuela*, No. 91-10391, 1992 WL 132907, at *1 (9th Cir. 1992) (district court did not err in barring evidence regarding previous sexual molestation of victim and, even if it did err, such error was harmless in light of overwhelming evidence against defendant); *Jeffries v. Nix*, 912 F.2d 982, 988-89 (8th Cir. 1990). Rhodes is therefore not entitled to relief on this ground.

## V. CONCLUSION

Rhodes is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: May 1, 2014.

_____/s/ James K. Singleton, Jr._____
JAMES K. SINGLETON, JR.
Senior United States District Judge
